**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>STRATAGEN INC., *et al.*,<br><br>Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 20-31975 (MI)<br><br>(Jointly Administered) |
| GlassRatner Advisory & Capital Group, LLC d/b/a/ B. Riley Advisory Services, as Plan Administrator for the CCI Unsecured Creditors' Trust,<br><br>Plaintiff,<br><br>v.<br><br>Scana Energy Marketing, LLC,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§**
**547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services, as the plan administrator (the "**Plaintiff**" or "**Plan Administrator**") supervising the CCI Unsecured Creditors' Trust (the "**Trust**"), by and through its undersigned counsel, files this complaint (the "**Complaint**") to avoid and recover transfers against Scana Energy Marketing, LLC ("**Defendant**") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

---

[1] The Reorganized Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. (0013); StrataGen, Inc. (5205); and Asset Guard Products Inc. (6422). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

#94430365v3

## NATURE OF THE CASE

1.	Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of StrataGen, Inc. and certain of its affiliated debtors (collectively, the "**Debtors**" or "**Reorganized Debtors**," as applicable)[2] pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "**Bankruptcy Code**") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtors commenced their bankruptcy cases and which transfers were not authorized by the Bankruptcy Code or this Court.

2.	In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.	The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

---

[2] The "Debtors" are all entities listed in footnote 1.

-2-

#94430365v3

4.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In addition, Plaintiff confirms its consent, pursuant to Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue of the Debtors' chapter 11 cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

## PROCEDURAL BACKGROUND

7.      On March 29, 2020 (the "**Petition Date**"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8.      On March 30, 2020, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases under the original lead case captioned *In re Carbo Ceramics, Inc., et al.* pursuant to Bankruptcy Rule 1015(b). [Case No. 20-31973, D.I. 24].

9.      On June 18, 2020, the Court entered an order confirming the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* (the "**Confirmation Order**" and, as amended, modified, or supplemented, the "**Plan**," respectively). [Case No. 20-31973, D.I. 539].

10.      The effective date of the Plan (the "**Effective Date**") occurred on July 2, 2020. [Case No. 19-36313, D.I. 566]. In accordance with the Plan and Confirmation Order, the Trust

was established as of the Effective Date of the Plan, and the Debtors and the Plan Administrator entered into that certain Liquidating Trust Agreement.[3]

11. Pursuant to paragraph 82 of the Confirmation Order and Article IV.D of the Plan, the Liquidating Trust Assets (as defined in the Plan), including all non-released Avoidance Actions arising under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [Case No. 20-31973, D.I. 528].

12. On September 20, 2021, the Court entered the *Final Decree (I) Closing Certain Chapter 11 Cases; (II) Amendment of the Order Directing Joint Administration of Chapter 11 Cases; and (III) Granting Related Relief* which, among other things, provided that (i) the cases of Debtors Asset Guard Products Inc. and CARBO Ceramics, Inc. (the "**Affiliate Cases**") were closed; (ii) the cases shall be jointly administered under Case No. 20-31975 of StrataGen, Inc. (the "**Open Case**"); (iii) all contested matters or adversary proceedings that have been filed or that may be filed in the future including, but not limited to, any chapter 5 causes of action related to any of the Cases or Debtors shall be administered in the Open Case, notwithstanding the fact that such contested matters or adversary proceedings may be related to an Affiliate Case; and (iv) Any Remaining Matters, including, without limitation, any pending or future contested matters or adversary proceedings, whether or not they pertain to the Open Case or Affiliate Cases, including any Claims Objections with respect to Claims against the Affiliate Debtors or adversary proceedings relating to the Affiliate Debtors or Affiliate Cases, shall be filed, administered, and adjudicated in the Open Case without the need to reopen the Affiliate Cases and the Court shall retain jurisdiction over the Remaining Matters. [Case No. 20-31973, D.I. 721].

---

[3] *See* Bankr. Case No. 20-31973, D.I. 530, Ex. D. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Liquidating Trust Agreement.

#94430365v3

## THE PARTIES

13.     Pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, the Plan Administrator was appointed to supervise the Trust and was granted the requisite and exclusive authority to appear as the party in interest and prosecute all Causes of Action (as defined in the Plan). Plaintiff is authorized and has standing, among other things, to prosecute, compromise, settle, abandon, dismiss, or otherwise dispose of causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action.

14.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that distributed gas and fuel to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business has been and is located at 6100 Emerald Parkway, Dublin, Ohio 43016. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of South Carolina.

## FACTUAL BACKGROUND

15.     As more fully discussed in the *First Amended Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* (the "**Disclosure Statement**"),[4] the Debtors provided products and services to the oil and gas, industrial, agricultural, and environmental markets. The Debtors conducted their business within two operating segments: (1) Oilfield and Industrial Technologies, and (2) Environmental Technologies and Services. The Oilfield and Industrial Technologies and Services segment manufactured and sold ceramic technology products and services and base ceramic proppant for both the oilfield and industrial sectors. The Environmental Technologies and Services segment provided products and services intended to protect operators' assets, minimize environmental risks, and lower lease operating expenses. This

---

[4] Case No. 20-31973, D.I. 255.

included providing spill prevention, containment, and countermeasure systems for the oil and gas and industrial industries. As of the Petition Date, the Debtors had approximately 330 full-time employees, approximately 7 part-time employees, and 15 independent contractors.

16.     Prior to the Petition Date, the Debtors, as providers of ceramic technology products and environmental risk minimization services, maintained business relationships with various business entities and individuals, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17.     The financial difficulties that led to the Debtors' decision to file the chapter 11 cases are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date.[5] Beginning in late 2014, a severe decline in oil prices and continued decline in natural gas prices led to a significant decline in oil and natural gas drilling activities and capital spending by E&P companies. Throughout the Debtors' history, base ceramic media was the dominant source of their revenue. From 2014 to 2019, the Debtors' total revenue for base ceramic media fell from approximately $530 million to approximately $34 million. Beginning early in 2015, the Debtors proactively implemented a number of initiatives to preserve cash, enhance liquidity, and lower costs, including but not limited to: (a) reducing workforce across the organization, (b) lowering production output levels in order to align with lower demand, including through idling and mothballing of some of the Debtors' production facilities, (c) limiting capital expenditures, and (d) eliminating dividends on CARBO's common stock. Additionally, the Debtors sought to generate liquidity through various transactions,

---

[5] These factors and events are discussed in greater detail in the Disclosure Statement, incorporated herein by reference.

including the sale of certain assets and facilities and the sublease of railcars and other non-essential

leased assets.

18.     However, despite these efforts, in the fall of 2019, forecasts maintained by

management began to suggest that, under certain downside scenarios, liquidity could begin to

reach critical levels in the spring of 2020. In December of 2019, the Debtors explored a myriad of

out-of-court and in-court solutions and began marketing substantially all of the Debtors' assets.

As efforts progressed and potential bidders performed due diligence, the financial markets suffered

a period of unprecedented volatility as a result of the COVID-19 pandemic spreading outside of

China, triggering travel restrictions, stay-at-home orders, business closures, and other effects and

commencing the first bear market in over ten years. At the same time, crude oil prices fell

precipitously beginning in the middle of March, reaching a low price of $19.27 per barrel on March

30, 2020, as a result of the price war between Russia and Saudi Arabia. Eventually, as the financial

and energy markets continued to further deteriorate, all of the remaining bidders informed the

Debtors that they were either pulling out of the stalking horse process altogether or would have to

drastically reassess the structure and value of their potential bids.

19.     As described in Article III of the Plan and Article VI.B of the Disclosure Statement,

General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid

in full.

20.     During the ninety (90) days before and including the Petition Date, that is between

December 30, 2019 and March 29, 2020 (the "**Preference Period**"), the Debtors continued to

operate their business, including the transfer of money, either by checks, cashier checks, wire

transfers, ACH transfers, direct deposits, or otherwise, to various entities.

#94430365v3

21. Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements for the purchase of goods and/or services from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "**Agreements**"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint.  The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A.  Such details include "Invoice Number," "Invoice Date," "Invoice Amount," and the "Payment Date."

22. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A hereto (the "**Transfer**" or "**Transfers**").  The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)." Additionally, to the extent there are any transfers that cleared the Debtors' accounts after the Petition Date (the "**Post-Petition Transfers**"), such amounts are listed on Exhibit A and incorporated herein by reference.

23. Plaintiff is seeking to avoid all of the Transfers made by the applicable Debtor(s) to Defendant within the Preference Period, as well as any unauthorized Post-Petition Transfers.

24. On or about September 13, 2021, Plaintiff, through counsel, sent a demand letter (the "**Demand Letter**") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the

Bankruptcy Code and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

25.     Plaintiff also performed Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the Debtors' books and records in Plaintiff's possession and identified that Defendant potentially has $155,316.88 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the Debtors' electronic books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this preliminary new value number is subject to adjustment. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

26.     Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

27.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code. It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtors, as well as interests of the Debtors in property, to or for the benefit of Defendant or any other transferee.  Plaintiff reserves the right to amend this original Complaint to include the following: (a) further information regarding the

#94430365v3

Transfer(s); (b) additional transfers; (c) modifications of and/or revision to Defendant's name; (d) additional defendants; (e) additional Debtor plaintiffs; and/or (f) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

**CLAIMS FOR RELIEF**

**First Claim for Relief**
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

28.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

29.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made each Transfer to or for the benefit of Defendant in an aggregate amount not less than $320,100.65.

30.     Each Transfer was made from the Debtor(s) identified on Exhibit A, and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

31.     Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

33.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted

by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

34.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

35.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36.     As a result of each Transfer, Defendant received more than Defendant would have received if: (a) the Debtors' chapter 11 cases were cases under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) Defendant received distributions on account of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, and as described in the Plan and Disclosure Statement, the Debtors' liabilities exceed their assets such that the Debtors' unsecured creditors will not receive payment of their claims in full from the Debtors' bankruptcy estates.

37.     In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## Second Claim for Relief
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

38.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

39.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently

#94430365v3

received, or was a transfer made by one Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "**Potentially Fraudulent Transfers**"); and

A.      The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.      The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C.      The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

40.      Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## Third Claim for Relief
### (Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)

41.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Third Claim for Relief.

42.      To the extent any of the Transfer(s) identified on Exhibit A cleared the Debtors' bank account(s) after the Petition Date, including any Post-Petition Transfers currently listed and identified on Exhibit A, and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to section 549 of the Bankruptcy Code.

## Fourth Claim for Relief
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

43.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with the allegations contained in this Fourth Claim for Relief.

44.     Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code, and any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code, and/or any Post-Petition Transfers pursuant to section 549 of the Bankruptcy Code (collectively, the "**Avoidable Transfers**").

45.     Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46.     Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## Fifth Claim for Relief
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

47.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

48.     Defendant is a transferee of transfers avoidable under sections 547, 548 and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

50.     Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against Plaintiff or the Debtors must be disallowed until such time

#94430365v3

as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51.     Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief against Defendant:

A.     On Plaintiff's First, Second, Third and Fourth Claims for Relief, judgment in favor of Plaintiff and against Defendant avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, 549 and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.     On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors or Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to section 502(d) and (j) of the Bankruptcy Code; and

C.     Such other and further relief as this Court may deem just and proper.

#94430365v3

Dated: March 23, 2022

**ASK LLP**

By: /s/ *Kara E. Casteel*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
Anastasia Kazmina, Esq., MN SBN 0398419
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3854
Fax: (651) 406-9676
Email: akazmina@askllp.com

*Attorneys for Plaintiff*

#94430365v3